IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHRISTOPHER S. ANTHONY                                                      PLAINTIFF

V.                                            NO.  15-3063

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Christopher S. Anthony, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff filed his applications for DIB and SSI on April 18, 2013, alleging an inability to work since November 18, 1983, due to Asperger's Syndrome; Sensory Intergrative Dysfunction; Developmentally delayed; Developmental reading disorder; and Dyslexia. (Doc. 12, pp. 216-228, 278, 283). An administrative hearing was held on May 21, 2014, at which Plaintiff appeared with counsel, and he and his mother testified. (Doc. 12, pp. 35-74).

By written decision dated September 11, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – Asperger's syndrome/autism. (Doc. 12, p. 21). However, after reviewing all of the evidence

1

presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, and repetitive tasks, in a setting where interpersonal contact is incidental to the work performed. In addition, the claimant can respond to supervision that is simple, direct, and concrete.

(Doc. 12, p. 22). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but there were other jobs Plaintiff would be able to perform, such as bundle clerk, laundry worker, and dining room bus person. (Doc. 12, p. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied that request on July 7, 2015. (Doc. 12, pp. 6-10). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§404.1520, 416.920   Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §§404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§404.1520, 416.920.

**III.   Discussion:**

Plaintiff's sole argument in this matter is that the ALJ erred in his RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-

MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from <u>Willms v. Colvin</u>, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." <u>Andrews v. Colvin</u>, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing <u>Cline v. Colvin</u>, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" <u>Id.</u> "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." <u>Id.</u>

In this case, the ALJ was presented with several letters from Plaintiff's mother, father, principal caregiver, Godparent, a licensed professional counselor who counseled Plaintiff from the seventh grade through the tenth grade, and a case manager who worked with Plaintiff when he was in high school. (Doc. 12, pp. 252, 256, 258, 260, 336). The ALJ was also presented with a Mental Diagnostic Evaluation, conducted by W. Charles Nichols, Psy.D. (Doc. 12, p. 468), and a Mental RFC Assessment, completed by John P. Godfrey, Ph.D. (Doc. 12, p. 478). The ALJ also had before him the treatment records of Plaintiff's long-time family physician, Dr. Russ Krienke, Medical Director of Austin Regional Clinic.

After evaluating all of the evidence of record, the ALJ afforded little or no weight to the opinions expressed by Dr. Krienke, finding that his opinions were inconsistent with the

5

testing results and opinions of Dr. Nichols, which the ALJ gave substantial weight. (Doc. 12, p. 20, 26). The ALJ also gave significant weight to the opinions of Mary Crook, a licensed professional counselor, who worked with Plaintiff for approximately four years while he was in high school. (Doc. 12, p. 20). The ALJ gave little or no weight to the opinions of Dr. Godfrey, finding that his opinions were based upon a single interaction with Plaintiff, and finding it to be at odds with other evidence in the record. (Doc. 12, p. 26). Finally, the ALJ gave less weight to the opinions of Plaintiff's friends and family than he gave to the opinions offered by medical sources. (Doc. 12, p. 26).

Mary Crook began working with Plaintiff when he was in the seventh grade, and continued to work with him off and on through the tenth grade. She kept in touch while he finished his junior and senior years at Austin High School. (Doc. 12, p. 336). She believed high school was better for Plaintiff simply because the other students gained enough manners through maturity to not react when Plaintiff was different or inappropriate. Ms. Crook opined that Plaintiff was unable to get and keep employment without assistance, but did see him as trainable in many areas with "consistent training and job monitoring." (Doc. 12, p. 336).

In his evaluation dated May 20, 2013, Dr. Nichols, who also met with Plaintiff only one time, noted that Plaintiff was unable to recall much about his mental health history, and believed Plaintiff's mother appeared to "overfunction" for him in some areas of life. (Doc. 12, p. 468). Dr. Nichols also noted that Plaintiff reported he was suspended approximately ten times from school for anger displays and talking back to teachers. (Doc. 12, p. 469). Dr. Nichols found that Plaintiff presented as socially aloof and awkward with poor facial regard and restricted affect, regularly displayed frustration and irritation with his mother, and displayed rigid adherence to routines, schedules, and excessive orderliness with his

belongings. (Doc. 12, p. 472). He diagnosed Plaintiff with Asperger's Disorder and gave him a GAF of 60. (Doc. 12, p. 472). Dr. Nichols found that Plaintiff had mild impairment of activities of daily living functioning, with primary impairments in social functioning; his capacity to interact and communicate with others was likely to be aloof and unlikely to be warm and spontaneous secondary to Asperger's disorder; and his social mannerisms were underdeveloped and awkward. (Doc. 12, p. 472). He noted that Plaintiff markedly struggled with simple math and seemed to have a poor sense of timeliness, had average cognitive abilities and mental efficiency, had average attention capacity, had average attention to detail and response quality, and responded with average pace. (Doc. 472-473).

On September 27, 2013, Dr. Godfrey completed a Mental RFC Assessment and noted that autism is not a treatable disorder, but is a chronic debilitating condition. (Doc. 12, p. 478). Dr. Godfrey found that as demonstrated by his behavior/responsiveness in the interview, as well as his reported history, Plaintiff had marked abilities in all categories relating to social interaction. (Doc. 12, p. 480). He found Plaintiff had a marked ability in responding appropriately to changes in the work setting, and that Plaintiff's impairment substantially interfered wiith his ability to work on a regular and sustained basis at least 20% of the time. (Doc. 12, pp. 480-481). Dr. Godfrey concluded that Plaintiff could work on a regular and sustained basis in light of his mental impairment, such as a sheltered workshop, where his cognitive inflexibility and difficulty with nuances of social reciprocity could be taken into account. (Doc. 12, p. 481). He also found that the statement made by Angela Morris, who was Plaintiff's case manager when he was in high school, correctly portrayed the kind of challenges that markedly impaired Plaintiff. He further found that Plaintiff could

7

not manage his own funds, and that he was naïve and likely to be "predated upon." (Doc. 12, p. 481).

Angela Morris wrote two letters on Plaintiff's behalf – one dated February 20, 2013, and one dated May 13, 2014. (Doc. 12, pp. 252, 372). In the February 2013 letter, Ms. Morris reported that she was Plaintiff's case manager when he was in high school and was employed as a specialist in the special education program specified as support for students with emotional disabilities. (Doc. 12, p. 252). She stated that because of his Asperger's, Plaintiff could not distinguish motives of others, and that based on thirty-five years of teaching and watching outcomes, she worried about what would become of Plaintiff unless he could get some intervention or actual disability income apart from his parents. (Doc. 12, p. 253). She noted that in the ten years since he graduated, Plaintiff had lost two jobs, and without intervention, this was likely to continue. (Doc. 112, p. 252).

Less than one month after the ALJ's decision, additional letters from family and friends were submitted.[1] One was a letter from Plaintiff's aunt, who stated that she had thought about offering to take care of Plaintiff should something happen to her sister, but she feared he might become angry about something and murder her in her sleep. (Doc. 12, p.

---

[1] When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. We then have no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, we have endeavored to perform this function with respect to the newly submitted evidence.

8

377). In addition, a letter was submitted from the individual Plaintiff assisted with yard work and gardening, which was referred to by the ALJ in his decision. (Doc. 12, p. 25). The ALJ noted that Plaintiff had performed some yard work for a neighbor in exchange for payment after his alleged onset date, and considered this a factor influencing his decision. (Doc. 12, p. 25). However, in the letter submitted by the neighbor, dated October 4, 2014, she reported that Plaintiff was frustrated because the work had to be done by hand. (Doc. 12, p. 398). She also found that she needed to work along with him constantly. "If I told him to do a task and when he finished that, what to start next, he would tell me that he would not be able to remember." (Doc. 12, p. 398). She also stated that if she suggested that he finish a project alone, he insisted that he could not do it by himself, and was not willing to change his workday when she needed him to. (Doc. 12, p. 398). She reported that they agreed mutually that he would not help her anymore. She concluded, "Chris perceives the world in a different way than most of us do. This filter is built in and not of his choosing." (Doc. 12, p. 398).

Although the ALJ gave Mary Crook's opinion significant weight, he failed to address her opinion that Plaintiff was unable to get and keep employment "without assistance," and that he would need "consistent training and job monitoring." This is consistent with Dr. Godfrey's opinion, to which the ALJ afforded little or no weight.

The Court finds the ALJ's conclusions are inconsistent with the weight he gave to the various opinions. The Court also notes that the Eighth Circuit has found that "[t]he evidence must show the claimant has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007)(quoting McCoy v.

9

Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), abrogated on other grounds, 524 U.S. 266, 118 S.Ct. 1984, 141 L.Ed.2d 269 (1998).

Accordingly, the Court finds this matter should be remanded in order for the ALJ to obtain another in-depth mental diagnostic evaluation, along with a Mental RFC assessment from a mental health expert, and to clearly set forth his findings that are consistent with the entire record.

**IV.    Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, reverses and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 31st day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE